UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

THOMAS F. PECKHAM, III, STACIA          )
PECKHAM, ADELAIDE PECKHAM,              )
AND THOMAS PECKHAM, JR.,                )
      Plaintiffs          )
           )
           )
     v.      )  Civil Action No. 11-30176-KPN
           )
           )
           )
NEW ENGLAND NEWSPAPERS,                  )
INC.,                                    )
      Defendant         )

MEMORANDUM AND ORDER WITH REGARD TO
DEFENDANT'S MOTION TO DISMISS (Document No. 7)
June 4, 2012

NEIMAN, U.S.M.J.

  Thomas F. Peckham, III ("Peckham"), his wife Stacia Peckham and his parents

Adelaide Peckham and Thomas Peckham, Jr. (together "Plaintiffs") have brought

claims of negligent infliction of emotional distress against New England Newspapers,

Inc., which operates under the trade name North Adams Transcript. ("Defendant").  In

addition, Peckham claims that Defendant violated his right to privacy.  The parties have

jointly consented to the jurisdiction of this court pursuant to 28 U.S.C. § 636(c) and

Fed. R. Civ. P. 73.

  Presently before the court is Defendant's motion to dismiss the complaint in its

entirety pursuant to Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6), asserting

that Plaintiffs' complaint was not timely served and raising as a defense its First

Amendment right to publish matters of legitimate public concern.  For the reasons that follow, Defendant's motion will be denied.

I. STANDARDS OF REVIEW

Rule 12(b)(5) provides for dismissal based on insufficient service of process. Further, Federal Rule of Civil Procedure 4(m) provides that "[i]f a defendant is not served within 120 days after the complaint is filed, the court -- on motion or on its own after notice to the plaintiff -- must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  FED. R. CIV. P. 4(m). "Once challenged, [a] plaintiff [has] the burden of proving proper service." *Rivera-Lopez v. Dorado*, 979 F.2d 885, 887 (1st Cir. 1992).

When faced with a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must accept the allegations of the complaint as true, drawing all reasonable inferences in favor of the plaintiff. *See Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Coyne v. City of Somerville*, 972 F.2d 440, 443 (1st Cir. 1992).  Moreover, "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Sepulveda-Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 28 (1st Cir. 2010).  Recently, the Supreme Court made clear that, under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), a complaint that states a plausible claim for relief, on its face, will survive a motion to dismiss.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009).  The Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

2

the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at

1949.

## II. BACKGROUND

The following facts come directly from the complaint and are stated in a light

most favorable to Plaintiffs, the parties opposing dismissal.  *Young v. Lepone*, 305 F.3d

1, 8 (1st Cir. 2002).

On July 4, 2008, Peckham was injured in an automobile accident when a driver,

operating his vehicle under the influence, crossed into Peckham's lane and collided

with his vehicle head-on.  (Complaint ¶¶ 7, 9.)  Emergency personnel arrived at the

scene and attempted to free Peckham from his car.  At some point during the rescue,

Peckham, who retained consciousness, became aware that his wife and father had

arrived at the scene and were watching events unfold from the side of the road.  (Id.

¶¶ 16-17.)  Hoping to signal to his family that he was still alive, Peckham attempted to

wave his hand.  (Id. ¶ 18.)  A photographer employed by Defendant captured that

moment in a photograph.  (Id. ¶ 19.)  On July 5, 2008, Defendant published a news

article in the North Adams Transcript reporting the accident, which also featured the

photograph taken at the scene.  (Id. ¶ 21.)

## III. DISCUSSION

### A. Service of Process

As a preliminary matter, the court finds that Plaintiffs have met their burden of

establishing timely service of process.  Plaintiffs filed their complaint on June 27, 2011.

On October 14, 2011, the court granted Plaintiffs' request to extend the deadline for

service of the complaint an additional sixty days, until December 26, 2011.  Because

there is no dispute that Plaintiffs served their complaint on Defendant on December 21,

2011, service was timely.  Accordingly, Defendant's motion to dismiss will be denied on

this ground.

      B. Failure to State a Claim

      At the hearing on Defendant's motion to dismiss, it became evident, upon inquiry

of the court, that the photograph of Peckham was made available to the public in four

different contexts: (1) the July 5, 2008 hard copy edition of the newspaper, (2) an online

edition of the newspaper, (3) a separate stand-alone item available for purchase from

Defendant's photo archives, and (4) an image which could be placed on various items of

merchandise, also available for public purchase.  From discussions between the court

and Defendant's counsel at the hearing, it appears that Defendant does not sell

photographs or merchandise directly to the public but, rather, makes such items

available through a third party; it is not clear precisely what fee arrangement, if any,

exists between Defendant and the third party.

      Plaintiffs do not challenge Defendant's publication of the accident photograph as

newsworthy in either the hard copy or online edition of the North Adams Transcript.  At

the hearing, however, Plaintiffs' counsel did assert that the availability of the stand-

alone photograph for sale raised privacy concerns and ought not be shielded by the

newsworthy defense.  Although the court harbors serious doubts about the viability of

this position, it notes that Plaintiffs' complaint only raises claims relevant to the fourth

context of use, *i.e.*, the sale of the image on commercial products.  Plaintiffs' complaint

simply alleges that Defendant violated Peckham's privacy by selling "reproductions of the accident scene photo in color on Tee-shirts, coffee mugs, and mouse pads" and that Plaintiffs suffered emotional distress as a result thereof.  (*See* Complaint ¶¶ 22, 28.) The court will confine its discussion accordingly.

For its part, Defendant has assumed the sufficiency of Plaintiffs' pleadings but argues that dismissal of their complaint is nonetheless mandated because Defendant is shielded from liability by its First Amendment right to publish "newsworthy" material.  In essence, Defendant alleges that any publication of the accident photograph, even in the context of commercial product sales, is not actionable because it relates to the automobile accident, a matter of legitimate public concern.  For the reasons which follow, the court believes that it is too early in these proceedings to reach such a conclusion.

1. The Right to Privacy in Massachusetts

In 1890, Samuel D. Warren and Louis D. Brandeis authored their seminal article articulating a new common law tort: the invasion of the right of privacy.  *See Howard v. Antilla*, 294 F.3d 244, 247-48 (1st Cir. 2002) ("It is rare that the pedigree of a whole breed of common law tort claims can be traced with pinpoint accuracy," but most agree that the "broad contours" of common law claims of the invasion of the right of privacy were outlined by Warren and Brandeis); *see also generally* Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 193, 214 (1890).  More than a half-century later, Dean William Prosser described four distinct causes of action that comprise the legal protections accorded to privacy: (1) intrusion upon solitude; (2)

5

public disclosure of embarrassing facts; (3) appropriation of an individual's name or likeness; and (4) publicly casting a person in a false light.  *See* William Prosser, *Privacy*, 48 Cal. L. Rev. 383, 389 (1960).

In Massachusetts, a general right to privacy has been codified at M.G.L. c. 214, § 1B, which provides that "a person shall have a right against unreasonable, substantial or serious interference with his privacy."  Separately, M.G.L. c. 214, § 3A provides a cause of action for "any person whose name, portrait or picture is used within the commonwealth for advertising purposes or for the purposes of trade without his written consent," the privacy tort known at common law as misappropriation.

It is not entirely clear under which specific statutory provision or provisions Plaintiffs believe Peckham's current privacy claim arises; their complaint does not refer to any statutory provision and states only that his privacy rights were violated. (Complaint ¶ 28.)  At the hearing on the motion to dismiss, however, Plaintiffs indicated that they may well proceed with claims under both provisions.  Indeed, the facts set forth in Plaintiffs' complaint may be fairly read to raise claims under both sections 1B and 3A. (*See* id. (alleging that Defendant interfered with Peckham's privacy rights via "exploitation of [the accident photograph] on mouse pads, tee-shirts and coffee mugs").) In any event Defendant does not challenge the sufficiency of Plaintiffs' complaint but, rather, asserts only a blanket defense of newsworthiness.  Accordingly, the court will assume Plaintiffs have asserted privacy claims arising under both statutory provisions.

2. The "Newsworthiness" Defense

The fact that a publication of otherwise private facts is not actionable because it

6

is "newsworthy," *i.e.*, that the publication touches upon a matter of "legitimate public concern," reflects a determination that an individual's right to privacy must sometimes yield to both the right of the public to be informed on certain issues and the right of the press to remain free and independent.  Thus, as the First Circuit has noted, "[e]ven if the private fact is not itself newsworthy, its publication is still protected if it has substantial relevance to, or any substantial nexus with a newsworthy topic."  *Riley v. Harr*, 292 F.3d 282, 298 (1st Cir. 2002).   Consequently, as Defendant points out, a finding of newsworthiness here could shield it from liability from all of Plaintiffs' tort claims.  *See Dineen v. Dep't of Social Servs.*, 2000 WL 199819, at *2-3 (Mass. Super. Ct. Jan. 31, 2000) (dismissing privacy claims and emotional distress claim upon a finding of newsworthiness).

Nonetheless, "the extent of the authority to make public private facts is not . . . unlimited."  RESTATEMENT (SECOND) OF TORTS § 652D, cmt. h (1977); *see also Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 491 (1975) ("In this sphere of collision between claims of privacy and those of the free press, the interests on both sides are plainly rooted in the traditions and significant concerns of our society.").  Rather, the "line is to be drawn when the publicity ceases to be the giving of information to which the public is entitled and becomes a morbid and sensational prying into private lives for its own sake."  RESTATEMENT (SECOND) OF TORTS § 652D, cmt. h (1977).

Although not raised by the parties, the court notes as an initial matter that there is some dispute as to whether "newsworthiness" is a question of law or fact.  Most Massachusetts state courts to have expressly considered the issue have refused to

characterize the issue as exclusively one or the other.  Instead, seeking middle ground,
the courts have emphasized the judge's role as "gatekeeper," stressing that a judge
must ensure that a legitimate factual question has been presented before referring it to
a jury.  Put another way, before deciding whether a particular publication is newsworthy
as a matter of law, a judge must make an initial determination as to whether "reasonable
minds could differ as to how the community would regard the publication at issue."
*Peckham v. Boston Herald, Inc.*, 719 N.E.2d 888, 893 (Mass. App. Ct. 1999).  Thus,
assuming that a judge makes the necessary threshold determination that a jury question
exists, the court would be precluded from deciding the question of newsworthiness as a
matter of law.  *See id.* (rejecting only "the view that the legitimacy of public concern
should always be treated as a question of fact, as that view eschews the
well-recognized gatekeeper function of the judiciary in these cases."); *Howell v.
Enterprise Publishing Co., LLC*, 893 N.E.2d 1270, 1282 (Mass. App. Ct. 2008) (question
for court as gatekeeper is whether jury question is presented regarding newsworthiness
of the publication), *rev'd on other grounds*, 920 N.E.2d 1, 8 (Mass. 2010).

　　　To be sure, the case law is somewhat unclear as to the precise inquiries a court
must make as gatekeeper.  However, based on its analysis of the relevant case law, this
court believes that the role entails a determination whether reasonable minds could
disagree as to (1) whether the subject matter at issue is properly considered a matter of
legitimate public concern and (2) whether there is a substantial nexus between the
publication and the alleged issue of concern.  *See Ayash v. Dana Farber Cancer
Institute*, 1997 WL 438769, at *5 (Mass. Super. Ct. July 18, 1997) ("In assessing

newsworthiness, courts examine the subject of the news report at issue and the logical nexus between this subject and any private facts revealed about the plaintiff."). Here, the court finds insufficient grounds to grant Defendant's motion to dismiss as a matter of law.

First, there is a paucity of relevant facts at this point in time. The universe of information known about Defendant's alleged conduct stems from only two sentences in Plaintiffs' complaint, one stating that Defendant made "commercial sale reproductions of the accident scene photo in color on Tee-shirts, coffee mugs, and mouse pads" (Complaint ¶ 22), and the other stating that, due to Defendant's "exploitation of the [accident photograph] on mouse pads, tee-shirts and coffee mugs, [Peckham's] right to privacy has been violated and he has suffered damages as a result thereof." (Id. ¶ 28.) Thus, the court is left to speculate as to what additional facts discovery might yield, and it declines to do so.

Indeed, as far as the court is aware, there is only a single instance in which a Massachusetts court, state or federal, made the determination that reasonable minds could not differ as to the newsworthiness of a particular publication at the motion to dismiss stage. See Bonome v. Kaysen, 2004 WL 1194731, at *1 (Mass. Super. Ct. Mar. 3, 2004) (finding newsworthy a semi-autobiographical book authored by defendant which discussed highly intimate details of her relationship with the plaintiff because, the court concluded, the details of the relationship were included to develop and explore themes related to matters of public concern). More often, the determination about newsworthiness is made only after discovery has been completed. See Riley, 292 F.3d

at 286; *Howell*, 893 N.E.2d at 1275; *Peckham*, 719 N.E.2d at 890; *Ayash*, 1997 WL 438769 at *1.

Second, the lines demarcating the boundaries of the newsworthy defense are not easily discerned.  As the court in *Bonome* recognized, "drawing the line between inviolable private information and matters of legitimate public concern" is a "difficult task" and courts "tread on dangerous ground deciding exactly what matters are sufficiently relevant to a subject of legitimate public interest to be privileged."  *Bonome*, 2004 WL 1194731, at *3 (internal citation omitted).  Although the court there ultimately allowed the defendant's motion to dismiss because it found the publication at issue newsworthy, those same concerns, in this court's view, make a determination of newsworthiness upon a factually anemic record all the more inappropriate.  To be sure, "accidents" are traditionally contemplated to be "news," *see* RESTATEMENT (SECOND) OF TORTS § 652D, cmt. g (1977), but the scope of the newsworthy defense does not extend to situations where "the publicity ceases to be the giving of information to which the public is entitled."  *Id.*, cmt. h.[1]

Suffice it to say, the newsworthy defense may well be unavailable to corporations seeking to protect commercial enterprises wholly unrelated to the publication of news. This may, in fact, be the line drawn by the drafters of M.G.L. c. 214, § 3A.  Employing

---

[1] Comment j to Section 652D of the Restatement indicates that "the scope of a matter of legitimate concern" encompasses something more than just "'news,' in the sense of reports of current events or activities."  RESTATEMENT (SECOND) OF TORTS § 652D, cmt. j (1977).  Rather, as explained in the Restatement, the defense "extends also to the use of names, likenesses, or facts in giving information to the public for purposes of education, amusement, or enlightenment, when the public may reasonably be expected to have a legitimate interest in what is published."  *Id.*

10

analogous language to comment j to section 625D of the Restatement, section 3A refers to a person's "name, portrait or picture," and prohibits their appropriation "for advertising purposes or for the purposes of trade." M.G.L. c. 214, § 3A. As the SJC noted, "the crucial distinction under [section 3A] must be between situations in which the defendant makes an incidental use of the plaintiff's name, portrait or picture and those in which the defendant uses the plaintiff's name, portrait or picture deliberately to exploit its value for advertising or trade purposes." *Tropeano v. The Atlantic Monthly Co.*, 400 N.E.2d 847, 850 (Mass. 1980). Accordingly, the SCJ in *Tropeano* held that the defendant newspaper was not liable under section 3A for publishing a photograph in connection with a news article because the photograph at issue "was published in connection with what is apparently a sociological commentary, and not as a means of soliciting sales or in association with an advertisement of any kind" and the "article or story involved . . . is a legitimate noncommercial use." *Id.* at 851. This commercial/noncommercial dichotomy may well be the appropriate line to draw regarding privacy and the newsworthy exception.

For the reasons stated, however, the court takes no position at this time as to where the boundary of the newsworthy defense would fall here. Thus, the court need only determine whether Plaintiffs' complaint raises a plausible claim for relief. It does. In short, for present purposes, the court finds that reasonable minds may disagree as to whether the sale of an accident photograph, unaccompanied by any information regarding the accident, sold exclusively for commercial purposes disconnected to the dissemination of news, following the prior publication of the photograph alongside an

11

undisputedly legitimate news article, crosses the line from the mere "giving of information" to a "sensational prying into private lives for its own sake." RESTATEMENT (SECOND) OF TORTS § 652D, cmt. h (1977).

Finally, the court declines to make a determination at this stage of the proceedings as to whether the question of newsworthiness should ultimately be decided as a matter of law or by a fact finder. Given that "the boundaries of 'legitimate public concern' have not been comprehensively explored in the Massachusetts case law," any resolution of these inquiries by the court at this point in time would be premature. *Bonome*, 2004 WL 1194731, at *5. Accordingly, the court will deny Defendant's motion to dismiss and allow Plaintiffs' claims for violation of privacy and negligent infliction of emotional distress to proceed.

IV. CONCLUSION

For the reasons stated, Defendant's motion to dismiss is DENIED. The Clerk shall set this matter down for a scheduling conference.

IT IS SO ORDERED.

DATED: June 4, 2012

        /s/   Kenneth P. Neiman
        KENNETH P. NEIMAN
        U.S. Magistrate Judge